U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 2 2 2013

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Bankruptcy Case No. |
| REOSTAR ENERGY CORPORATION, | § | 10-47176-dml-11 (as |
| ET AL., | § | consolidated for Joint |
| | § | Administration with |
| Debtors. | § | Bankruptcy Case Nos. |
| | § | 10-47198; 10-47201; |
| | § | and 10-47203) |
| | § | |
| CREDITOR TRUST OF REOSTAR | § | |
| ENERGY CORPORATION | § | |
| | § | |
| Plaintiff, | § | Adversary No. 11-4022-dml |
| | § | |
| VS. | § | |
| | § | District Court Case No. |
| MARK ZOUVAS, | § | No. 4:12-CV-046-A |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion filed by Berkley
Insurance Company ("Berkley") on August 9, 2013, to reopen the
case and for leave to exceed page limitations.  For the reasons
stated below, the court has concluded that such motion should be
denied.

I.

Background and Procedural History

A.   The Underlying Litigation

The above-captioned district court action was initiated as
an adversary proceeding in the United States Bankruptcy Court for

the Northern District of Texas, Fort Worth Division, by the
filing of a complaint on February 17, 2011, by ReoStar Energy
Corporation ("ReoStar"), the debtor in bankruptcy, against two
defendants, Mark Zouvas ("Zouvas") and BT and MK Energy and
Commodities LLC ("BT & MK").  In a general way, the subject of
the litigation was a complaint by ReoStar that Zouvas, who was
managing ReoStar, violated fiduciary duties he had to ReoStar in
connection with a bank loan that was secured by properties owned
by ReoStar, which resulted in BT and MK becoming the holder of
the bank loan and the first lien on ReoStar's properties that
secured the loan.

While the action was pending in the bankruptcy court, many
other defendants and two plaintiffs were added by Reostar.  The
docket of the adversary proceeding shows that before the
reference to the bankruptcy court was withdrawn by this court in
March 2012, 184 items were filed in the adversary proceeding.
Certain of the newly added defendants were dismissed from the
action by the bankruptcy court before the withdrawal of the
reference.

The attorney who represented ReoStar in the filing of the
adversary proceeding was Bruce W. Akerly ("Akerly") of Cantey
Hanger LLP ("Cantey Hanger").  He continued to represent ReoStar
in the litigation throughout the time the adversary proceeding
was pending in the bankruptcy court.  An attorney for one of

2

ReoStar's creditors, Stephanie D. Curtis ("Curtis") of the firm
of Curtis|Castillo PC ("Curtis Castillo"), actively participated
in the prosecution of the litigation in cooperation with Akerly
and Cantey Hanger.

In January 2012, ReoStar and Curtis's client, Russco Energy,
LLC ("Russco"), jointly filed a motion asking this court to
withdraw the reference of the adversary proceeding to the
bankruptcy court.  This court granted the motion in March 2012.
Until the action was finally dismissed in February 2013, the
undersigned presided over the action.  According to this court's
docket, over 200 items were filed in this action after the
reference to the bankruptcy court was withdrawn and before the
final judgment of dismissal of the action was signed on
February 20, 2013.

While the action was pending before this court, all of the
defendants other than Zouvas were dismissed from the action by
separate orders and judgments by the time the final judgment of
dismissal was entered in February 2013.  Some of the dismissals
were upon motion of the plaintiff.  Most were upon motion of the
dismissed defendant or sua sponte by the court.  One of the
dismissals was on the joint motion of ReoStar and the dismissed
defendant, Scott Allen ("Allen"), made near the conclusion of a
hearing at which the court heard testimony that Allen had been
joined as a party to the litigation in violation of an agreement

reached between Allen and Curtis, who apparently was acting on
behalf of ReoStar and Russco.   Akerly and Cantey Hanger continued
to represent ReoStar through that hearing.   At the conclusion of
the hearing, the court allowed Cantey Hanger and the attorneys
associated with it to withdraw from representation of ReoStar and
substituted Mark Castillo ("Castillo") of Curtis Castillo as
ReoStar's attorney in the litigation, with the proviso that
Curtis would not participate in any manner in the representation
of ReoStar in the litigation.

In November 2012, Christopher S. Heroux, as Creditor Trustee
for ReoStar, ("Heroux") was substituted for ReoStar as the
plaintiff.   By then, this court had, sua sponte, dismissed from
the action the other plaintiffs who had been added by ReoStar
while the action was pending in the bankruptcy court.   The
February 20, 2013 final dismissal of the action was a sanction
imposed under Rule 16(f)(1)(C) of the Federal Rules of Civil
Procedure by reason of Heroux's failure to comply with pretrial
orders.

There was no appeal from the February 20, 2013 final
judgment or any of the earlier judgments of dismissal, each of
which was made final by a direction by the court that there be
entry of final judgment and an express determination by the court
that there was no just reason for delay in such an entry.   The
February 20 final judgment awarded costs of court to Zouvas

4

against Heroux.  On March 26, 2013, Zouvas filed a bill of costs,
which was accompanied by a request that the court tax costs
against present and former counsel of plaintiff as well as
Heroux, a request that was denied by the court.  The costs that
were taxed against Heroux pursuant to Zouvas's bill of costs were
in the total amount of $97,356.51.  In May 2013, exhibits that
had been offered by ReoStar were destroyed consistent with the
court's exhibit destruction procedures in closed litigation.
Prior to that, the undersigned's copy file, from which the
undersigned normally works when presiding over civil litigation,
was discarded.

The lead attorney for Zouvas throughout the litigation,
starting with the adversary proceeding in the bankruptcy court
and going through the final dismissal on February 20, 2013, was
John D. Galarnyk ("Galarnyk") of Chicago, Illinois.  He had
Dallas lawyers working with him as local counsel.

B.    The Motion to Reopen for the Filing of a Motion for
      Sanctions, and Related Activities

On July 1, 2013, a document was filed with the papers in
this action titled "Zouvas's Motion to Reopen the Case and for
Leave to Exceed Page Limitations," which was accompanied by a
document titled "Mark Zouvas's Motion for Sanctions Pursuant to
Federal Rule of Civil Procedure 16, 28 U.S.C. § 1927, and the
Court's Inherent Powers," a 108-page document titled "Defendant

5

Mark Zouvas's Memorandum in Support of His Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 16, 28 U.S.C. § 1927, and the Court's Inherent Powers," and a 27-volume appendix containing 5,451 pages. According to the motion to reopen, if that motion were to be granted and the tendered motion for sanctions were to be filed, the court would be asked to "award Zouvas his costs, expenses, attorney fees, and such other relief to which he may be entitled under the circumstances." 1st tendered Mot. for Sanctions at 4. The motion to reopen alleged that "Zouvas seeks to file a motion for sanctions seeking to recover substantial attorneys' fees, costs, and expenses," Mot. to Reopen at 3, and that "Zouvas seeks sanctions in an amount equal to the entirety of his costs, expenses, and attorney fees." Id. at 5. The proposed sanctionees named in the July 1 filings were Akerly, Cantey Hanger, Curtis, Curtis Castillo, Castillo, Heroux, Russco, J.B. Bennett, B. Bennett, and Kevin Russell. The attorneys who made the July 1, 2013 filings were the same attorneys who represented Zouvas in the underlying litigation, Galarnyk and the Dallas local counsel.

Several of the proposed sanctionees filed responses to Zouvas's motion to reopen the case and for leave to exceed page limitations. All of the responses raised issues as to the timeliness of the motion to reopen and proposed motion for sanctions. Some of the proposed sanctionees suggested that the

motion for sanctions was subject to the automatic stay related to ReoStar's bankruptcy case as well as being subject to an order that had been entered by the bankruptcy court prohibiting claims against certain of the proposed sanctionees.  Suggestions also were made that the July 1 filings were subject to the automatic reference to the bankruptcy court contemplated by this court's Miscellaneous Order No. 33, which requires an automatic reference to the bankruptcy court for consideration and resolution consistent with law of any and all proceedings arising under Title 11 or arising in or related to a case in Title 11.

Certain of the proposed sanctionees questioned whether Zouvas had standing to file a motion to reopen for the filing of a motion for sanctions to recover attorney's fees, costs, and expenses incurred in the underlying litigation considering that Zouvas did not incur any attorney's fees, costs, or expenses in connection with the underlying litigation.  Those responses pointed out that an insurance company, Berkley, paid all of the attorney's fees, costs, and expenses of the attorneys who were representing Zouvas in the underlying litigation, with the consequence that Berkley was the real party-in-interest who should be pursuing any motion for sanctions that sought recovery of those attorney's fees, costs, and expenses.

A point invariably made in the responses by the potential sanctionees was that in no event should Zouvas be rewarded by the

7

grant of his motion to reopen considering that he had failed to comply with an order of this court to attend a court-ordered conference that was held on July 8, 2013. As to that subject, on July 1, 2013, the court ordered Zouvas, his counsel, and the proposed sanctionees to meet face-to-face in Dallas, Texas, on July 8, 2013, for a conference in an effort to resolve the issues raised by the July 1 motion papers. July 1, 2013 Order at 2-3. The court learned from reports of that conference filed by counsel for Zouvas and proposed sanctionees who attended the conference that Zouvas did not attend. According to one version, his absence was because he could not arrange transportation from San Diego, California, to Dallas but was available by telephone, and other versions were that his nonattendance was because he preferred not to spend the cost of the airfare from San Diego to Dallas.

Because of Zouvas's failure to comply with the July 1 order directing his attendance at the July 8 face-to-face conference, the court issued an order on July 10, 2013, that (1) expressed the court's tentative conclusion that Zouvas was subject to sanctions, including possible contempt of court sanctions, because of his failure to comply with the July 1 order, and (2) ordered Zouvas to appear before the court at 10:30 a.m. on July 16, 2013, for the purpose of showing cause, if any he had, why he

should not be sanctioned, including contempt of court sanctions, for his noncompliance with the July 1 order.

Not until the court questioned Zouvas at the July 16 hearing did the court learn that, in fact, Zouvas had no financial interest in the motion to reopen the case or the proposed motion for sanctions and that, indeed, Berkley was the only entity (other than the attorneys prosecuting the motion papers) who had any financial stake in the motion to reopen and the proposed motion for sanctions. On this subject, Zouvas testified as follows at the July 16 hearing:

> THE COURT: . . . .
>
> How much of the legal expense the attorneys are trying to recover in your name -- attorneys fees, whatever other legal expenses they are proposing to recover, if I reopen the case -- how much of that did you personally pay or incur?
>
> THE WITNESS: Not much, Your Honor. I've only paid for incidental, out-of-pocket expenses that were related to my travel, but for the most part, all of those fees were picked up by the insurance company.
>
> * * * * *
>
> THE COURT: And you say you paid some incidental expenses. Have you kept record of how much you've spent?
>
> THE WITNESS: It -- no. No, Your Honor. It's -- it's probably less than a couple hundred dollars. It's not -- it's insignificant.
>
> * * * * *

      THE COURT:  Do you have any idea how much you would be asking to recover by way of sanctions, if I were to allow the Motion for Sanctions to be filed?

      THE WITNESS:  None.  Nothing.

      THE COURT:  Pardon?

      THE WITNESS:  Nothing.

      THE COURT:  In other words, everything would be recovered by the insurance company?

      THE WITNESS:  Yes, sir.

Tr. of July 16, 2013 Hr'g at 25-26.

      Based on the knowledge the court acquired at the July 16 hearing, the court issued an order on July 16, 2013, directing that Berkley take appropriate steps to be substituted for Zouvas as the movant in the July 1 motion papers.  On July 29, 2013, Galarnyk and his local counsel filed a motion in the name of Zouvas asking that Berkley be substituted for Zouvas as a movant in the July 1 motion papers.  On August 1, 2013, the court ordered that Berkley be substituted for Zouvas and that if Berkley wished to continue to pursue the July 1 motion to reopen, it file an amended motion to reopen showing Berkley as the movant and that the sanctions that would be sought if the motion were to be granted would be for the benefit of Berkley.  On August 9, 2013, a new set of motion papers were filed, this time showing the movant to be Berkley.  The new set, which included the 27-volume appendix, appears to be essentially identical to the set

10

of motion papers that had been filed on July 1, except for the change in the name of the movant, elimination of Rule 16 as a basis for sanctions, and elimination of Heroux as a proposed sanctionee.

The court mentions a matter that might be viewed to be only tangentially related to the main subject of this memorandum opinion and order. Because of what the court considered to be misrepresentations in the July 1 motion papers, a lack of candor with the court by Galarnyk relative to the identity of the real party-in-interest in the motion to reopen and the proposed motion for sanctions, and the apparent failure of Galarnyk to properly represent the interests of Zouvas in matters related to the face-to-face conference, motion to show cause, and show cause hearing, the court, after having heard from Galarnyk, issued an order on July 22, 2013, finding that in more than one respect Galarnyk's conduct was unbecoming a member of the bar of this court, with the consequence that sanctions could be, and were, imposed on him pursuant to the authority of Rule LR 83.8(b)(1) of the Local Civil Rules of this court. Galarnyk has filed a motion seeking reconsideration of the findings and rulings in the July 22 order, and the court has that motion under advisement at this time.

When Galarnyk met with proposed sanctionees at the July 8 court-ordered face-to-face meeting, he represented to those present that the attorney's fees and other litigation expenses

11

incurred in the representation of Zouvas in the underlying
litigation amounted to $2,500,000.  Tr. of July 16, 2013 Hr'g at
35.  At the July 16 hearing, Galarnyk informed the court that the
attorney's fees portion of the expenses was approaching
$2,000,000 and that the $2,500,000 number included other
litigation expenses on top of the attorney's fees.  Id. at 35-36.
He was unable at the hearing to inform the court of the exact
dollar amount that would be sought by way of sanctions if the
motion to reopen was granted.  The court ordered that Galarnyk
file an itemized list of costs, expenses, and attorney's fees
that would be sought by way of sanctions if the motion to reopen
were to be granted.  He filed such a list on August 9, 2013.  It
was a 307-page document that appears to contain thousands of
entries of items of litigation expenses, which shows costs,
expenses, and attorney's fees incurred through Galarnyk's firm in
the total amount of $1,171,611.72, and costs, expenses, and
attorney's fees incurred through Dallas local counsel in the
total amount of $611,861.63, for a grand total of $1,783,473.35.

II.

## The Decision to Deny the Motion to Reopen

The court starts under this heading by making clear that the
court has not formed an opinion as to whether sanctions would be
appropriate if the court were to permit the filing by Berkley of
its motion for sanctions.  If the motion for sanctions were to be

filed, a major piece of litigation would ensue.  This court would be required to evaluate the conduct of litigants at each step of the way during pendency of the bankruptcy court adversary proceeding from mid-February 2011 until late March 2012, as well as conduct of the parties while the litigation was pending on this court's docket from March 2012 through February 2013.  The underlying litigation was complex, both during the period of time when it was pending on the bankruptcy court's docket and when it was pending on this court's docket.  Virtually every action taken by ReoStar and Russco and their respective counsel at each stage of the litigation, beginning in February 2011 and ending in February 2013, would have to be evaluated for motive, intent, and propriety.[1]  The fact that the most significant of those actions occurred while this case was pending before the bankruptcy judge would cause such an evaluation to be particularly difficult for the undersigned to make.

The foregoing having been said, the court did develop serious concerns while the undersigned was presiding over the litigation with the tactics and activities of Akerly (and,

---

[1]Section 1927 of Title 28 of the United States Code authorizes sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously," and the sanction authorized by § 1927 is a requirement that the offending attorney "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." By its very nature, § 1927 contemplates a searching evaluation of all attorney conduct about which complaint is made, including an evaluation as to whether that conduct led to "excess" costs, expenses, and attorney's fees "reasonably" incurred because of that conduct. A similar searching inquiry is required for an evaluation as to whether sanctions should be imposed pursuant to the court's inherent sanctioning authority. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 765-67 (1980).

through him, Cantey Hanger) and Curtis (and, through her, Curtis
Castillo). However, if the motion for sanctions were to be
filed, the court would be in no position at this time to form
definitive opinions as to whether Akerly, Cantey Hanger, Curtis,
or Curtis Castillo engaged in sanctionable conduct. Instead, the
court would be required to devote tremendous judicial resources
to a fully informed evaluation.

Galarnyk and some of the proposed sanctionees, acting
through counsel, have informed the court that rather extensive
discovery would be required in preparation for a hearing on the
motion for sanctions if the court were to permit it to be filed.
Before the court could form even a tentative opinion on the
sanction issues, the court would be required to make a detailed
study of the record of the underlying litigation and pertinent
parts of any discovery conducted in relation to the motion for
sanctions. If, as some of the parties suggest, the motion for
sanctions would more appropriately be dealt with by the
bankruptcy judge, the bankruptcy judge's decision making would be
just as difficult as this court's would be. Not only would the
court responsible for deciding such a motion be required to make
the kinds of evaluations mentioned above, the presiding judge
would be required to evaluate reasonableness and necessity of
each of the thousands of items of litigation expense included in
the $1,783,473.35 grand total.

While the court is hesitant to conclude that a court should refrain from undertaking resolution of a judicial dispute because of the drain it would have on judicial resources, the court is inclined to think such a factor is appropriate to consider along with the other issues that have been presented to the court for consideration.  The court has concern with the timeliness of the filing of the motion to reopen.  Records have been destroyed, and the making of the evaluations that would have to be made if the motion for sanctions were to be filed would be more difficult now than they would have been if the motion had been filed promptly after the March 2013 deadline for the filing of a notice of appeal.  While the court has not resolved the bankruptcy court issues raised by proposed sanctionees in opposition to the motion for sanctions, the court has conducted enough of a review of those issues to know that they are real and serious.

While not a determinative factor, the court cannot overlook Galarnyk's conduct in relation to the allegations in the originally filed motion papers and his related conduct through the July 16 hearing.  The court has a concern that if the court were to permit the motion for sanctions to be filed, there is a risk that the nature of representation that would be provided to Berkley in the pursuit of the motion could present less than acceptable uncertainties and difficulties.

Having considered all of the factors mentioned in the memorandum opinion and order, the court has concluded that Berkley's motion to reopen the case should be denied.  Of course, the request for leave to exceed page limitations becomes moot upon denial of the motion to reopen.

### III.

### Order

Therefore, the court ORDERS that the motion to reopen the case filed by Berkley on August 9, 2013, be, and is hereby, denied.

SIGNED August 22, 2013.

JOHN McBRYDE
United States District Judge